United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Juan Leonardo Raudez, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 20-22004-Civ-Scola |
| | ) |
| Village of Biscayne Park and others, Defendants. | ) |

### Order Granting Motions to Dismiss

Plaintiff Leonardo Raudez complains Defendants Village of Biscayne Park, Police Chief Raimundo Atesiano, and Officer Guillermo Ravelo wrongfully arrested and prosecuted him, leading to his conviction for burglary, as part of a conspiracy to artificially boost Biscayne Park's burglary clearance rates. (Am. Compl., ECF No. 21.) He sets forth seven counts: malicious prosecution, under 42 U.S.C. § 1983, as to Biscayne Park (count one); false arrest/imprisonment, under § 1983, against Biscayne Park (count two); tort of abuse of process against Biscayne Park (count three); equal-protection violations, under § 1983, against Biscayne Park (count four); due-process violations, under § 1983, against Atesiano and Ravelo (counts five and six); and acting in furtherance of a criminal conspiracy, under 42 U.S.C. § 1985, against all Defendants (count seven). All three Defendants have filed motions to dismiss, arguing, variously, that the bulk of counts two through seven are barred by the statute of limitations; Biscayne Park is immune from suit for the tort of abuse of process (count three); the complaint fails to state an equal-protection violation claim or due-process claims under the Fifth, Sixth, and Fourteenth Amendments; the conspiracy claim is barred by the intra-corporate-conspiracy doctrine (count seven); Ravelo is entitled to qualified immunity; and Ravelo and Atesiano cannot be sued in their official capacities. (Biscayne Park's Mot., ECF No. 25; Ravelo's Mot., ECF No. 27; Atesiano's Mot., ECF No. 28.) Raudez, of course, opposes their motions. (Pl.'s Resp., ECF No. 36.) The Defendants have filed a consolidated reply to Raudez's response. (Defs.' Reply, ECF No. 44.) After careful review, the Court finds the bulk of Raudez's claims, excepting his malicious-prosecution claims, to be untimely and **grants** the Defendants' motions on that basis (**ECF Nos. 25, 27, 28**). Additionally, the Court has reviewed the complaint and concludes Raudez has failed to state a claim for malicious prosecution and orders him to **show cause**, on or before **November 9, 2020**, why the remainder of his case should not be dismissed on that basis.

## 1. Background[1]

Beginning in January 2013, Atesiano, the chief of police of Biscayne Park, sought to bolster his career and status by increasing the number of the town's burglaries that were solved. (Am. Compl. ¶ 16.) In order to effectuate this plan, says Raudez, Atesiano "devised and implemented a [department] policy . . . of arresting persons (mainly Black and Hispanic males), with previous criminal records and charging them with the unsolved burglaries" without probable cause. (*Id.* ¶ 17.) In doing so, explains Raudez, Atesiano sought to have his department effect arrests for every single reported dwelling and vehicle burglary. (*Id.*) Atesiano was then able to use the appearance of a one-hundred-percent clearance rate for burglaries to curry favor with elected town officials and citizens while touting Biscayne Park as a crime-free neighborhood. (*Id.* ¶¶ 17, 37.) Raudez alleges that this policy became Biscayne Park's policy with respect to the town's policing efforts and public safety. (*Id.* ¶ 18.)

In both mid-August 2013 and late January 2014, burglaries were reported at 1153 Northeast 119th Street, in Biscayne Park, including a burglary of a dwelling and the theft of an air-conditioning unit. (*Id.* ¶ 19.) On January 26, 2014, Ravelo stopped Raudez, as he was driving on a Biscayne Park street. (*Id.* ¶ 20.) At some point during the stop, Atesiano arrived on scene. (*Id.* ¶ 21.) Incident to the stop, Ravelo arrested Raudez, taking him into custody, and charging him with one count of "False Name/ID After Arrest" and one count of "Driving While License Suspended/With Knowledge." (*Id.* ¶ 20.)

While Raudez was still incarcerated, as a result of the traffic-stop charges, on January 31, 2014, he was charged, in another criminal case, with a felony count of "Dealing in Stolen Property." (*Id.* ¶ 22.) Atesiano signed an affidavit supporting this charge. A week later, on February 7, another affidavit followed, apparently also submitted by Atesiano, in the stolen-property case, to add charges of burglary of an unoccupied dwelling and grand theft. (*Id.* ¶ 23) Though the exact details are unclear, Raudez says Ravelo and Atesiano "alleged that . . . Raudez made self-incriminating statements," supporting his arrest and charge for one count of "Grand Theft from a Dwelling/Curtilage" involving the air-conditioning unit that was reported stolen from 1153 Northeast 119th Street. (*Id.* ¶ 23.)  Indeed, Atesiano and Ravelo both said that Raudez confessed to the charges for which he was arrested and charged: "False Name/ID After

---

[1] The Court accepts the Plaintiff's factual allegations as true for the purposes of evaluating the complaint and the Defendants' motions to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). The Court notes that Raudez's recitation of the facts is disjointed, repetitive, and often difficult to parse. What follows, then, is the Court's best interpretation of the allegations as Raudez has presented them.

Arrest," "Driving While License Suspended/With Knowledge," and "Grand Theft from a Dwelling/Curtilage."[2] (*Id.* ¶¶ 25, 26.) Atesiano and Ravelo both testified, under oath, that Raudez confessed to the charged crimes. (*Id.* ¶ 28.)

As a result of the charges, and, it appears, his prior criminal history, the prosecution sought enhanced penalties, classifying Raudez as a habitual violent-felony offender. (*Id.* ¶¶ 22, 24.) Based on his incriminating statements and confession, prosecutors told Raudez they would seek to impose the maximum penalty of fifteen years in prison. (*Id.* ¶ 28.) In considering this steep sentence, if convicted, Raudez chose to, as he describes it, "ple[a]d *nolo contendere* to crimes he did not commit." (*Id.* ¶ 29.) As a result, Raudez was ultimately sentenced to and served only two years, as opposed to the threatened fifteen, in prison. (*Id.* ¶ 29.) Throughout his complaint, Raudez repeatedly maintains he was wrongfully incarcerated for crimes he did not commit. (*Id.* ¶¶ 29–30, 33–36, 66, 79, 90, 100.)

In the meantime, towards the end of 2013 or the beginning of 2014, Atesiano's scheme was beginning to come to light. (*Id.* ¶ 39.) By then, at least one police officer had notified the Biscayne Park city manager of Atesiano's maneuverings. (*Id.*) This disclosure prompted internal-affairs, Federal Bureau of Investigation, and United States Department of Justice investigations. (*Id.*) As a result of the investigations, Atesiano resigned from office in mid-2014. (*Id.*) Thereafter Ravelo was indicted by the federal government in April 2018, in the Southern District of Florida, "for crimes, including conspiracy against civil rights, and deprivation of rights under color of law." (*Id.* ¶¶ 45, 48.) A few months later, in June 2018, Atesiano was indicted, in a separate case, "for crimes, including criminal conspiracy against civil rights, and deprivation of rights under color of law, in violation of Title 18, United States Code, Section 242." (*Id.* ¶¶ 44, 50.) A superseding indictment, thereafter, additionally charged Atesiano "with a broader conspiracy involving minorities[] (Black and Hispanic) who were the victims of the conspiracy." (*Id.* ¶ 51.) Both Ravelo and Atesiano, in July and September 2018, respectively, pleaded guilty to the charges. (*Id.* ¶¶ 49, 52.) They were both later sentenced and incarcerated. (*Id.* ¶ 53.)

About a year later, in July 2019, the state court vacated Raudez's judgments and sentence, in both his traffic and theft cases, "based on newly discovered evidence . . . thereby exonerating [him]." (*Id.* ¶ 43.)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as

---

[2] At some point—it's not entirely clear when—the count for burglary "was dismissed because of insufficient evidence." (*Id.* ¶ 31.)

true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Analysis

#### A. The bulk of Raudez's claims are untimely.

As an initial matter, all three Defendants point to the statute of limitations as foreclosing nearly all of Raudez's claims. And while the parties on both sides all agree that the applicable limitations period is four years,[3] they disagree, except as to the claims relating to malicious prosecution, about when that period began to run. Raudez maintains that the limitations period for all

---

[3] "Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §§ 1983 and 1985." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

his claims started when his judgments and sentence were vacated by the state court—on July 31, 2019. (Pl.'s Resp. at 8–9.) Raudez also argues it is inappropriate to consider the statute of limitations in the context of a motion to dismiss. (*Id.* at 9.) Lastly, Raudez submits that, even if the Court finds the limitations period to have expired, the period should be equitably tolled based on his "lack of knowledge that his federal rights had been violated and . . . his need to seek redress." (*Id.* at 10.) Raudez's opposition misses the mark on all three points.

First, "[t]he proper standard for whether or not a § 1983 cause of action accrues prior to the overturning of a conviction or sentence, is whether the § 1983 action 'necessarily' requires the plaintiff to prove the unlawfulness of his conviction or confinement." *Rowe v. City of Fort Lauderdale*, 8 F. Supp. 2d 1369, 1372 (S.D. Fla. 1998) (Highsmith, J.) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994)). Put another way, under federal law, the limitations clock starts running when the plaintiff has "a complete and present cause of action." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Except for malicious prosecution, none of Raudez's claims against the Defendants requires him to prove the unlawfulness of his conviction. *E.g.*, *Heck*, 512 U.S. at 486 n.5 (acknowledging "favorable termination of prior proceedings is not an element of [an abuse of process claim]" and pointing out that "[t]he gravamen of that tort is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends"); *Wallace*, 549 U.S. at 397 ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Foudy v. Indian River County Sheriff's Office*, 845 F.3d 1117, 1123 (11th Cir. 2017) ("finding equal protection claims accrued when allegedly discriminatory [action] was taken because that is when injury occurred and plaintiffs had not met burden to show they were "justifiably ignorant" of the action at that time)[4]; *Fuqua v. Turner*, 3:17-CV-1911-UJH-AKK, 2018 WL 513343, at *2 (N.D. Ala. Jan. 23, 2018) (recognizing accrual of a claim for a due-process violation of a right to a fair trial was on the date of the plaintiff's arrest). To the extent Raudez's conspiracy claim is premised on claims other than malicious prosecution, it is time barred as well. *See Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) (recognizing that a conspiracy to commit false arrest is simply a "recast" of the

---

[4] It is worth noting that, other than conclusory, unsupported, and rhetorical assertions, lacking any factual allegations, Raudez fails to supply any substantiation for his claim that either Ravelo or Atesiano's indictments, pleas, or sentences revealed that their scheme specifically targeted Hispanic males.

false-arrest claim itself and will be time barred if the underlying false-arrest claim is itself time barred).

Simply put, the statute of limitations for Raudez's claims began to run when the facts underlying his causes of action were known, or should have been known by a reasonably prudent person, and when he knew, or had reason to know, of his injury and who caused it. *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987). Raudez would have learned his rights had been violated, based on the allegations in the complaint, when he says he was falsely arrested and then falsely charged. If Raudez did not commit the crimes he was arrested and charged with, he would have had a basis *at that time* to assert his claims at the time of his wrongful arrest. He would have then had four years from that date, in 2014, to obtain police reports, investigate the circumstances of his arrest, review evidence, retain counsel, and then file suit. That Raudez much later discovered, through happenstance and not, in any event, through his own due diligence, about what might have *motivated* the Defendants' alleged wrongful conduct, does not delay the accrual of his claim.

Next, regarding Raudez's second and third points, a claim may be dismissed on the basis of a statute of limitations where it is apparent from the face of a complaint that the claim is time barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). And where a lawsuit, on its face, is filed beyond the applicable statute of limitations period, the pleading itself, to avoid dismissal, must set forth facts showing that the period should be tolled. *See Parrish v. City of Opp, Ala.*, 898 F. Supp. 839, 841 (M.D. Ala. 1995) ("[T]he burden of alleging facts which would give rise to the tolling the limitations period falls upon the plaintiff.") (citing *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co.*, 899 F.2d 1045, 1054 (11th Cir.1990)). In order to establish an entitlement to tolling, a plaintiff must present extraordinary circumstances that prevented him from filing within the applicable statutory window. *Betts v. Hall*, 679 Fed. App'x 810, 812–13 (11th Cir. 2017). "Equitable tolling is sparingly applied and is only appropriate if the "extraordinary circumstances" are beyond the plaintiff's control and unavoidable even with diligence." *Id.* at 813.

There is no basis for tolling the accrual date, here, because "[a]ny falsification of reports, tampering with evidence, or other action to conceal misconduct does not change the fact that Plaintiff knew or should have known of his injuries" in 2014 "by virtue of the fact Plaintiff admits when he was arrested," it was without probable cause. *Sanders v. Beck*, 1:17-CV-270-MW-GRJ, 2018 WL 4326860, at *4 (N.D. Fla. Aug. 23, 2018), *report and recommendation adopted,* 1:17CV270-MW/GRJ, 2018 WL 4326812 (N.D. Fla. Sept. 10, 2018), *appeal dismissed,* 18-14220-J, 2019 WL 5079554 (11th Cir.

Apr. 19, 2019), *cert. denied,* 140 S. Ct. 563 (2019). Raudez's contention that he did not know that Atesiano and Ravelo "had falsified evidence, had made illegal arrests[,] and had given false testimony under oath in judicial proceedings, including . . . the criminal cases against Raudez" (Pl.'s Resp. at 10) is belied by the very allegations of his own complaint: Raudez says he knew, at the time of his arrest and at the time he was charged with theft, that he was being wrongfully arrested and charged for crimes he did not commit (*e.g.*, Am. Compl. ¶ 29). That the Defendants "allegedly concealed their conduct – whether through making misrepresentations to the courts or through the fabrication of reports – fails to constitute 'extraordinary circumstances' that warrant tolling the statute of limitations." *Sanders*, 2018 WL 4326860 at *5. Plaintiff does not have "a life[]time free pass to drag his claims for conspiracy, false arrest, and other related claims past the statute of limitations simply because it was not until years after his false arrest that he learned of illegal behind-the-scenes conduct used to conceal Defendants' alleged constitutional violations." *Id.* at *6. Additionally, none of the listed grounds for equitable tolling in Florida Statute section 95.051 are applicable here. Raudez has simply failed to carry his burden in establishing that equitable tolling of the limitations period should be applied.

Based on the expiration of the limitations period and the absence of facts supporting tolling, then, the Court dismisses all of Raudez's claims except for his claims for malicious prosecution, as set forth in counts one (against Biscayne Park), five (against Atesiano), and six (against Ravelo).

### B. The complaint fails to state claims for malicious prosecution against any of the Defendants under 42 U.S.C. § 1983.

Although none of the Defendants raised the issue, the Court finds Raudez has failed to state a claim for malicious prosecution against any of the Defendants under § 1983. *See Brinson v. Welsh*, 709 Fed. App'x 582, 584 (11th Cir. 2017) (holding it is within a district court's discretion to dismiss an action sua sponte as long as the plaintiff is notified or otherwise afforded an opportunity to respond).

"Malicious prosecution [is] a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Wood*, 323 F.3d at 881 (cleaned

up).[5] Under Florida law, a plaintiff must establish each of six elements to support a claim of malicious prosecution: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). With respect to the Fourth Amendment, "a plaintiff must establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020).

     Here, Raudez must establish, in asserting his malicious prosecution claims, that the legal process justifying his seizure after his warrantless arrest—that is, the affidavits supporting his arraignments—were "constitutionally infirm and that his seizure would not otherwise be justified without legal process." *Id*. In order to show that his arraignment was constitutionally infirm, Raudez must establish either (1) that the officer who submitted the affidavit supporting his charges should have known that his affidavit failed to establish probable cause or (2) that an official involved in the legal process intentionally or recklessly made misstatements or omissions necessary to support the charges. *Id*. Raudez fails to allege the necessary facts to establish either.

     Raudez's complaint abounds with generalities, innuendos, and unsupported conclusions that the Defendants violated his constitutional rights. For example, Raudez says that, because he "is a Hispanic male of medium complexion/color, and had a criminal record" at the time of his traffic stop, by Ravelo, he "fit the profile of people to be arrested pursuant to the Policy in effect by . . . Atesiano." (Am. Compl. ¶ 24.) He also repeatedly points out that neither Atesiano nor Ravelo audiotaped or videotaped or otherwise recorded "Raudez's alleged confessions that were the cause of his arrest and charges of one count of False Name/ID After Arrest, one count of Driving While License Suspended/With Knowledge, and one felony count of Grand Theft from a Dwelling/Curtilage." (*Id*. ¶¶ 26, 28, 65.) And while he persistently describes the arrest affidavits that Atesiano and Ravelo signed under oath, in which they apparently reference Raudez's confessions, as "fraudulent," and unsupported

---

[5] The Court uses "(cleaned up)" to indicate internal quotation marks, alterations, or citations have been omitted from quotations. *See, e.g., Durham v. Rural/Metro Corp.*, 955 F.3d 1279, 1285 (11th Cir. 2020).

by probable cause, he never supplies specific facts that would actually support his bare allegations of fraud and falsity. (*Id.* ¶¶ 27, 31, 33, 37, 41, 79, 90, 103.) Similarly, Raudez complains, without support, that, to the extent his "plea of *nolo contendere* is deemed a confession, it was obtained through coercion and unconstitutional tactics . . . including the threat of the potential imposition of a much longer prison term." (*Id.* ¶ 30.) He also doggedly maintains that he spent two years in prison, "wrongfully incarcerated for crimes he did not commit" (*Id.* ¶¶ 29, 30, 33–36, 66, 79, 90, 99, 100), but never connects his alleged innocence to whether, at the time of preparing the affidavits, either Atesiano or Ravelo knew or should have known there was no probable cause to support the charges. Similarly, Raudez also continually references the scheme to which Atesiano and Ravelo pleaded guilty, but fails to allege any facts that show the illegal policy was ever applied to him in particular. (*Id.* ¶¶ 42, 46, 47, 53, 58, 62, 65, 67, 72, 81, 83, 92, 99, 101, 103.) In sum, missing from Raudez's complaint are any factual allegations that would allow the Court "to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Instead, Raudez offers only "labels and conclusions" or allegations that are simply disconnected from his own case. *See Iqbal*, 556 U.S. at 679 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") While the charges against Atesiano and Ravelo, along with their eventual guilty pleas, no doubt tainted every single arrest they made during the relevant period, that does not mean, in turn, that every single arrest they happen to have made during that timeframe was necessarily unconstitutional or otherwise violative of state law.

Because of Raudez's failure to state a claim for relief based on his allegations of malicious prosecution—the only claims that are not barred by the statute of limitations—the Court orders him to show cause why the Court should not dismiss his case.

### 4. Conclusion

Based on the foregoing, the Court finds all but Raudez's malicious prosecution claims to be untimely. Accordingly, the Court **grants** the Defendants' motions (**ECF Nos. 25, 27, 28**) on that basis and **dismisses those claims with prejudice**. *See Benedek v. Adams*, 725 Fed. App'x 755, 760 (11th Cir. 2018) ("The . . . dismissal of the § 1983 claims as untimely was a decision on the merits for res judicata purposes.") The Court additionally finds, sua sponte, that Raudez has failed to state a claim for malicious prosecution under the Fourth Amendment against any of the Defendants. He is therefore ordered

to **show cause**, on or before **November 9, 2020**, why the Court should not dismiss his case on this basis.

 **Done and ordered**, at Miami, Florida, on October 29, 2020.

                _____
                Robert N. Scola, Jr.
                United States District Judge